903 So.2d 314 (2005)
Scott CHARLES, Appellant,
v.
STATE of Florida, Appellee.
No. 2D04-1857.
District Court of Appeal of Florida, Second District.
June 10, 2005.
*315 James Marion Moorman, Public Defender, and Richard J. Sanders, Assistant Public Defender, Bartow, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Chandra Waite Dasrat, Assistant Attorney General, Tampa, for Appellee.
WALLACE, Judge.
Scott Charles appeals his conviction of dealing in stolen property. Because the trial court permitted the State's rebuttal witness to testify without first conducting an adequate Richardson[1] hearing, we reverse and remand for a new trial.
An investigation into home invasion robberies led to Charles, who the State alleged *316 unlawfully trafficked in jewelry that he knew or should have known was stolen. See § 812.019(1), Fla. Stat. (2003). The theory of Charles' defense was that he purchased jewelry for his girlfriend from one of the robbers without knowing that the jewelry was stolen.
The State called Charles' girlfriend, who testified that Charles purchased an engagement ring from a man whom the State at trial established to be one of the robbers. She testified that Charles sold the ring because she did not like it. However, she supported the defense theory by testifying that Charles did not know that the ring was stolen.
After the girlfriend testified, the State called the lead investigator, Officer Rosas, who had interviewed Charles and his girlfriend in their apartment before Charles' arrest. According to Officer Rosas, the girlfriend told the officer that Charles knew that the robber trafficked in stolen jewelry  namely, two rings. Charles purchased one ring from the robber and later exchanged it for a second ring. Charles then offered the second ring to his girlfriend, but he sold it because she did not like it. Officer Rosas also testified that Charles admitted to him this same version of events, including Charles' knowledge that both rings were stolen.
On cross-examination, defense counsel established that Officer Rosas did not tape-record or keep notes of his conversations with Charles or his girlfriend. Defense counsel also referred to the officer's pretrial deposition testimony in an attempt to develop an inconsistency about another aspect of the case.
In the defense case, defense counsel called the girlfriend to testify. She denied telling Officer Rosas that Charles knew that the ring was stolen. She also denied knowing about a second ring.
In the State's rebuttal case, the State announced that it intended to call Officer Peasley, who had been present when Officer Rosas interviewed Charles and his girlfriend. Officer Peasley was prepared to testify that he overheard the girlfriend make the statements to which Officer Rosas had testified but the girlfriend had denied. Defense counsel protested, "He's not listed as a witness."[2] The prosecutor reminded the court that he had announced Officer Peasley's name as a potential witness in the morning before the trial began. After some argument about whether Officer Peasley was listed as a witness, the trial court stated that it was convinced that Officer Peasley was listed and that it would allow him to testify. However, this was not the court's final word on defense counsel's objection. After entertaining further argument and being unable to locate Officer Peasley's name in the record, the court ruled that it would allow Officer Peasley to testify "[b]ecause he's being offered for impeachment purposes."
When a trial court is alerted to a possible discovery violation, the court is required to make an adequate inquiry into the totality of the circumstances, including whether the violation was inadvertent or willful, whether it was trivial or substantial, and, most important, whether it prejudiced the defendant's ability to prepare for trial. See R.D. v. State, 842 So.2d 863, 864 (Fla. 2d DCA 2003) (citing Richardson v. State, 246 So.2d 771, 775 (Fla.1971)); see also Sears v. State, 656 So.2d 595, 596 (Fla. 1st DCA 1995); Brown v. State, 640 So.2d 106, 107 (Fla. 4th DCA 1994). There is neither a rebuttal nor an impeachment exception to the Richardson rule. Elledge *317 v. State, 613 So.2d 434, 436 (Fla.1993). Disclosure of a witness on the day of trial does not preclude the possibility of a discovery violation. See R.D., 842 So.2d 863.
Contrary to what Richardson requires, the trial court did not conduct a thorough inquiry into the alleged discovery violation to determine whether a discovery violation occurred, whether the defense was prejudiced by the violation, and whether corrective action was required to restore fairness to the proceedings. See State v. Schopp, 653 So.2d 1016, 1021 (Fla.1995). This was error. However, our analysis does not end here.
Upon finding a violation of Richardson, the appellate court must apply a special harmless error test:
[T]he appellate court must consider whether there is a reasonable possibility that the discovery violation procedurally prejudiced the defense. As used in this context, the defense is procedurally prejudiced if there is a reasonable possibility that the defendant's trial preparation or strategy would have been materially different had the violation not occurred. Trial preparation or strategy should be considered materially different if it reasonably could have benefited the defendant. In making this determination[,] every conceivable course of action must be considered. If the reviewing court finds that there is a reasonable possibility that the discovery violation prejudiced the defense or if the record is insufficient to determine that the defense was not materially affected, the error must be considered harmful. In other words, only if the appellate court can say beyond a reasonable doubt that the defense was not procedurally prejudiced by the discovery violation can the error be considered harmless.
Id. at 1020-21. This test differs from the customary harmless error test under State v. DiGuilio, 491 So.2d 1129, 1135 (Fla. 1986), in that the focus is not on the error's impact on the jury's verdict. Rather, the focus is on "`its impact on the defendant's ability to prepare for trial.'" Schopp, 653 So.2d at 1019 (quoting Smith v. State, 500 So.2d 125, 126 (Fla.1986)).
Were we to apply DiGuilio's harmless error test, we might be inclined to hold that the error did not contribute to the jury's verdict because Officer Peasley's testimony was merely cumulative to that of Officer Rosas. However, following Schopp's teaching, the record is insufficient for us to conclude beyond a reasonable doubt that Charles' preparation or trial strategy would not have been different. Absent Officer Peasley's testimony, it was the girlfriend's word against Officer Rosas' word about what she said during the interview. Part of Charles' defense strategy was to undermine Officer Rosas' testimony because it was uncorroborated. The record does not show that there was no reasonable possibility that defense counsel would not have called the girlfriend to contradict Officer Rosas' testimony if defense counsel had known that Officer Peasley was prepared to corroborate Officer Rosas' testimony. Indeed, a proper Richardson inquiry by the trial court would have permitted such a lack of prejudice to be determined. However, without such an inquiry, the record does not support a finding of harmless error with the degree of certainty required.
Because we reverse for the reasons expressed above, we need not address Charles' other appellate issues.
Reversed and remanded.
NORTHCUTT and DAVIS, JJ., concur.
NOTES
[1] Richardson v. State, 246 So.2d 771 (Fla. 1971).
[2] After a defendant elects to participate in discovery, the prosecutor has a continuing obligation to disclose the names of all investigating officers. Fla. R.Crim. P. 3.220(b). Defense counsel then has the opportunity to depose any such officer before trial subject to Florida Rule of Criminal Procedure 3.220(h).